2298

The STATE, Respondent v. Sherman PORTERFIELD, Appellant.

(454 S.E. (2d) 351)

Court of Appeals

*Deputy Chief Atty. Joseph L. Savitz, III,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Miller W. Shealy, Jr.,* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard Dec. 6, 1994.

Decided Jan. 30, 1995; Reh. Den. Mar. 9, 1995.

SHAW, Judge:

Appellant Sherman Porterfield was indicted on one count of drug trafficking and two counts of money laundering. The jury acquitted him of trafficking but found him guilty of one

count of money laundering. The trial judge sentenced Porterfield to twenty years imprisonment suspended to five years service with five years probation. Porterfield appeals the trial judge's denial of his motion for directed verdict. We reverse.

While employed as a car salesman at "Wrights on Main" car dealership, Porterfield entered into negotiations with Shane Thompson about the sale of a Mercedes Benz which "Wrights on Main" was selling pursuant to a consignment agreement. However, on January 25, 1991, before the negotiations were completed, Thompson was arrested on drug charges. After his arrest, Thompson agreed to assist narcotics agents in an effort to arrest Porterfield. Thompson and the narcotics agents devised a plan whereby Thompson would continue to negotiate with Porterfield for the purchase of the Mercedes. Thompson testified that on February 12, 1991, he went to Wrights on Main to discuss the price of the vehicle with Porterfield. According to Thompson, he and Porterfield agreed that Thompson would purchase the car for $10,000 in cash and four ounces of cocaine.

On February 14, Thompson called Porterfield at Wrights on Main to set up the exact time Thompson was to bring the money and cocaine to him. During the February 14 telephone conversation, which was monitored, Thompson told Porterfield he "got paid by the insurance company" and that he (Thompson) wanted to consummate the deal on the following day. Thompson testified he told him this because he knew Porterfield would not have proceeded with the deal if he had known the money was actually provided by the Sheriff's Department. Thompson asked Porterfield if he wanted Thompson to leave the money and the cocaine in the car or if he wanted Thompson to bring the money and cocaine directly to him. Porterfield responded that Thompson should "leave the blow (cocaine) out. . . . Don't even do that." Thompson then asked him if he wanted Thompson to just bring him $10,000 in cash. Porterfield responded "[r]ight."

On February 15, Thompson and a narcotics agent went to Wrights on Main to consummate the transaction. Thompson and the narcotics agent had with them $10,000 in cash, obtained from a bank account belonging to the Sheriff's Department, and four ounces of cocaine in the trunk of the car. Thompson, who had been "wired," went into Wrights on Main

with the $10,000 in cash while the narcotics agent remained in the car with the cocaine. During Thompson's meeting with Porterfield, Thompson told him he wanted to have the title to the car put in a family member's name so that the car would not be subject to forfeiture. Porterfield responded he (Porterfield) could "do it like that." He had Thompson count out the $10,000 in cash. After Thompson counted the money, Porterfield asked Thompson to remove his jacket and shirt at which point Porterfield noticed the transmitter which was taped to Thompson's shoulder. Porterfield then terminated the meeting and told Thompson to leave. After Thompson left his office with the $10,000 in cash, Thompson called Porterfield and tried to rehabilitate the transaction. He refused any further dealings with Thompson.

After submission to the jury, Porterfield was convicted of one count of money laundering on the $10,000 cash transaction. He was found not guilty on the second count of money laundering involving the cocaine and was also acquitted of trafficking in cocaine.

*Discussion*

S.C. Code Ann. § 44-53-475(A)(1) (Supp. 1993) provides:

Whoever, *knowing that the property involved* in a financial transaction *represents the proceeds of, or is derived directly or indirectly from the proceeds of unlawful activity relating to narcotic drugs* or controlled substances, conducts or attempts to conduct such a financial transaction *which in fact involves the proceeds:*
(a) with the intent to promote the carrying on of unlawful activity relating to narcotic drugs or controlled substances; or
(b) knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, sources, ownership, or control of the proceeds of the unlawful activity is guilty of a felony. . . . (Emphasis added.)

Porterfield asserts the prosecution failed to prove under S.C. Code Ann. § 44-53-475(A)(1) that the relevant $10,000 in cash represented "the proceeds of unlawful activity relating to narcotic drugs or controlled substances," or that, even if

the money had been illegally generated, Porterfield knew or firmly believed that it had. We agree.

While the record includes evidence Porterfield knew Thompson wished to place the automobile in the name of another to avoid possible forfeiture and Thompson intended to make a large cash payment, there is no evidence he was alerted that the $10,000 was proceeds from Thompson's drug activities. In fact, the record clearly shows Thompson informed Porterfield the money was generated from insurance proceeds. Thus, the record demonstrates Porterfield may have been only suspicious the money was in fact some form of drug money.

The forbidden act is knowingly conducting or attempting to conduct a financial transaction which "in fact involves" proceeds "of unlawful activity relating to narcotic drugs." It has been noted that, in drug cases, although the element of knowledge is seldom susceptible of direct proof, it may be proved circumstantially. *See State v. Attardo,* 263 S.C. 546, 211 S.E. (2d) 868 (1975) (in prosecution for knowing or intentional possession of controlled substance, knowledge can be proved by evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substance). Knowledge is generally a question for the jury. *Id.*

However, even if the inference may be drawn from the evidence that Porterfield believed the money was derived from Thompson's drug activities, the record shows the $10,000 was not derived from that source. Rather, the money used for the transaction was money previously seized by the Sheriff's Department which had been placed in a bank account. At most, Porterfield suspected the proceeds were derived from Thompson's illegal drug activity, not from money seized by law enforcement officials from some other source. In short, the only evidence of knowledge he may have had as to the proceeds was based on a false fact. Accordingly, we hold the conviction below is reversed.

Reversed.

CURETON and GOOLSBY, JJ., concur.